# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

ABRAHAM BARKHORDAR, individually and on
behalf of all others similarly situated,

                                                    Plaintiff,

        v.

HARVARD UNIVERSITY,

                                                    Defendant.

No.

<u>JURY TRIAL DEMANDED</u>

## <u>CLASS ACTION COMPLAINT</u>

# TABLE OF CONTENTS

**Page**

I.      NATURE OF ACTION ..................................................................................................1

II.     JURISDICTION AND VENUE ...................................................................................3

III.    PARTIES ......................................................................................................................4

IV.     FACTS ..........................................................................................................................5

        A.      Harvard sets its tuition and fees based on providing students in-person classes and in-person access to professors, students, and the full array of campus resources. ..5

        B.      Plaintiff and Class Members paid tuition and fees for Spring 2020 Term with the expectation of in-person learning...........................................................................7

        C.      Harvard ends in-person classes and moves to online instruction without issuing a tuition refund........................................................................................................8

        D.      Harvard maintains virtual instruction for Fall 2020 without any reduction in any tuition or fees. ....................................................................................................11

        E.      Harvard's refusal to reduce its tuition harms Plaintiff and Class Members. .........14

1.      The Named Plaintiff's Experiences ................................................................16

2.      Economic Damages ........................................................................................17

V.      CLASS ACTION ALLEGATIONS ...........................................................................18

VI.     CAUSES OF ACTION ...............................................................................................21

PRAYER FOR RELIEF ........................................................................................................25

JURY DEMAND ....................................................................................................................25

Plaintiff, ABRAHAM BARKHORDAR, individually and on behalf of all others similarly situated, for this Class Action Complaint against Defendant Harvard University ("Harvard"), based upon personal knowledge as to his own actions and based upon the investigation of counsel regarding all other matters, complains as follows:

## I.     NATURE OF ACTION

1.     This Class Action Complaint comes during a time of hardship for so many Americans, with each day bringing different news regarding the novel coronavirus COVID-19.[1] Social distancing, shelter-in-place orders, and efforts to 'flatten the curve' prompted colleges and universities across the country to shut down their campuses, evict students from campus residence halls, and switch to online "distance" learning.

2.     On March 10, 2020, Harvard announced that beginning March 23, 2020 (the first day back from Spring Recess), it would transition all classes (undergraduate, graduate, and professional) to virtual instruction until further notice. In accordance with this policy, Harvard has not held any in-person classes since March 13, 2020. Instead, all classes for the remainder of the Spring Term were offered in an online format with no in-person instruction.

3.     The online learning option Harvard offered following the termination of its in-person services is subpar in practically every aspect: lack of facilities, lack of materials, lack of efficient classroom participation, and lack of access to faculty. Moreover, students have been deprived of the opportunity for collaborative learning and in-person dialogue, feedback, and critique. The remote learning option is in no way equivalent to the in-person education that Plaintiff and other Class

---

[1] Plaintiff and Plaintiff's counsel are mindful of the severe impact of the coronavirus on all aspects of society. To minimize the burden on the Court and to reasonably accommodate Defendant, Plaintiff will work with Defendant to reach an agreeable schedule for its response to this Class Action Complaint.

Members were promised in exchange for their commitment to attend Harvard and the tuition and fees many of them paid during the Spring 2020 Term.

4.      Furthermore, despite these changes, Harvard continues to charge for tuition and fees as if nothing has changed, reaping the financial benefit of millions of dollars from students despite the inferior online learning environment. Therefore, all students paid full tuition for the Spring 2020 Term although they received no in-person instruction and had zero to extremely limited access to campus facilities following March 13, 2020. So, while students enrolled and paid Defendant for a comprehensive academic experience, Defendant instead offered Plaintiff and the Class Members something far less: a limited online experience presented by Zoom, void of face-to-face faculty and peer interaction, separated from program resources, and barred from facilities vital to study. Plaintiff and the Class Members did not bargain for such an experience.

5.      While some colleges and universities have promised appropriate and/or proportional refunds, Harvard excludes itself from such other institutions treating students fairly, equitably, and as required by the law. Harvard has refused to provide any tuition refund for the Spring 2020 semester.

6.      In late May and early June of 2020, Harvard Medical School, Harvard Law School, Harvard Kennedy School, and the Harvard Graduate School of Education announced that the Fall 2020 Term will occur solely in an online format. Harvard Business School and the undergraduate College have yet to announce whether in-person classes will resume for the Fall 2020 Term.

7.      While some schools (*e.g.*, Law) offered current and incoming students a deferral option, others (*e.g.*, Education) did not. Furthermore, the tuition for each Harvard school for the Academic Year 2020–2021 will remain flat at the 2019–2020 level. Thus, Harvard declined to offer any sort of tuition reduction in light of the fact that a full one-half (and perhaps more) of the 2020 Academic Year will occur solely in an online format. The Harvard Law School administration has

even gone so far as to tell concerned students to take out an additional loan and "rent office space" if they have trouble studying off-campus.[2]

8.     Defendant's actions have significantly financially damaged Plaintiff and the Class Members. Plaintiff brings this action because Plaintiff and the Class defined below have lost—and will continue to lose—the benefit of the education and services they were promised without a corresponding reduction in tuition and fees.

9.     Plaintiff therefore seeks, individually and on behalf of the Class, a proportionate reimbursement of tuition and fees for the Spring 2020 Term and a similar reimbursement for any subsequent academic term conducted in online format and for which Harvard charges tuition and fees at the same level or higher as prior years.

## II.     JURISDICTION AND VENUE

10.     This Court has jurisdiction over the subject matter presented by this Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the Class is a citizen of a State different from any Defendant, and in which the matter in controversy exceeds in the aggregate sum of $5,000,000.00, exclusive of interest and costs. Plaintiff alleges that the total claims of individual Class Members in this action are in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. §§ 1332(d)(2) and (6). Diversity of citizenship exists under CAFA as required by 28 U.S.C. § 1332(d)(2)(A). Plaintiff alleges that more than two-thirds of all of the members of the proposed Class in the aggregate are citizens of a state other than Massachusetts, where this action is originally

---

[2] https://abovethelaw.com/2020/06/harvard-law-tells-concerned-students-to-rent-office-space-to-study-during-online-only-semester./.

being filed, and that the total number of members of the proposed Class is greater than 100, pursuant to 28 U.S.C. § 1332(d)(5)(B).[3]

11.     This Court has personal jurisdiction over Defendant because it is headquartered in this District and many of the acts and transactions giving rise to this action occurred in this District.

12.     Venue is appropriate in this District because Defendant is located within the District of Massachusetts. And on information and belief, events and transactions causing the claims herein, including Defendant's decision-making regarding its refund policy challenged in this lawsuit, has occurred within this judicial district.

### III.     PARTIES

13.     Plaintiff Abraham Barkhordar is a citizen and resident of California. Plaintiff is enrolled as a full-time graduate student at Harvard Law School. Plaintiff is in good financial standing at Defendant, having paid in whole or in combination tuition, fees, costs, and/or room and board charges assessed and demanded by Defendant for the Spring 2020 Term. Plaintiff paid Defendant for opportunities and services that he will not receive, including on-campus education, facilities, services, and activities.

14.     Plaintiff enrolled at Harvard to obtain the full experience of live, in-person courses and direct interactions with instructors and students. Plaintiff chose Harvard due to the accessibility of professors and camaraderie with his classmates in and out of the classroom. While Harvard offers some online programs, Plaintiff purposefully did not apply to those programs.

15.     On March 10, 2020, Harvard announced that beginning March 23, 2020 (the first day back from Spring Recess), it would transition all classes to virtual instruction until further notice.[4] In

---

[3] About 17.1% of the students attending Harvard University come from within Massachusetts. https://www.collegefactual.com/colleges/harvard-university/student-life/diversity/#chart-geographic-diversity.
[4] https://www.harvard.edu/covid-19-moving-classes-online-other-updates.

accordance with this policy, Harvard has not held any in-person classes since March 13, 2020. Furthermore, in late May and early June of 2020, Harvard Medical School, Harvard Law School, Harvard Kennedy School, and the Harvard Graduate School of Education announced that the Fall 2020 Term will occur solely in an online format.

16.     As a result, Plaintiff's coursework has completely transitioned to online learning. While Plaintiff's coursework requires group projects and collaboration, such teamwork is now significantly harder to orchestrate. Plaintiff has also been unable to connect with professors and classmates on the same level online as he had in-person and is similarly lacking the intellectual stimulation of the in-person learning environment.

17.     With the transition to online learning, Plaintiff has experienced a decrease in the quality and academic rigor compared to his experiences in-person. Plaintiff's ability to interact, and the number of interactions, with professors have significantly decreased. Moreover, the assignments and expectations of professors are less rigorous and less is expected of the students. Such decreased assignments and reduced expectations in turn have reduced and negated the educational experience for which Plaintiff paid Defendant.

18.     Defendant Harvard University is a private university with its principal place of business at 1350 Massachusetts Avenue, Suite 450, Cambridge, Massachusetts, 02138. Defendant provides Class Members with campus facilities, in-person classes, as well as a variety of other facilities for which Defendant charged Plaintiff and the Class Members.

## IV.     FACTS

### A.  Harvard sets its tuition and fees based on providing students in-person classes and in-person access to professors, students, and the full array of campus resources.

19.     Founded in 1636, Harvard is one of the most prestigious schools in the world and is widely considered the pinnacle of higher education in the United States.

20.     Harvard's enormous endowment, the largest in the world, is reflective of the institution's prestige. At nearly $40 billion, the Harvard endowment is larger than half of the world's countries' GDPs.[5]

21.     Rather than use its sizeable endowment to offset rising student tuition costs, Harvard charges tuition in the upper echelon of schools in the United States and globally. Tuition for Harvard College is currently $46,340 per year.[6]

22.     Like most universities in the United States, Harvard's undergraduate tuition has increased dramatically over the last 20 years.[7] For the 2000–2001 school year, Harvard's tuition was just $22,694.[8]

23.     Annual tuition at the graduate and professional schools is even higher than at the undergraduate College. For example, Harvard Law School tuition is $65,875 and Harvard Business School tuition is $73,440.

24.     Furthermore, while many schools nationwide offer and highlight remote learning capabilities as a primary component of their efforts to deliver educational value (*see, e.g.*, Western Governors University, Southern New Hampshire University, University of Phoenix-Arizona), Harvard is not such a school.

25.     Rather, a significant focus of Harvard's efforts to obtain and recruit students pertains to the campus experience it offers along with face-to-face, personal interaction with skilled and world-renowned faculty and staff.

---

[5] https://www.usnews.com/education/best-colleges/the-short-list-college/articles/10-universities-with-the-biggest-endowments; https://www.boston.com/news/business/2014/09/25/harvards-endowment-is-bigger-than-half-the-worlds-economies.
[6] https://www.harvard.edu/about-harvard/harvard-glance.
[7] https://www.usnews.com/education/best-colleges/the-short-list-college/articles/10-most-least-expensive-private-colleges.
[8] https://news.harvard.edu/gazette/story/2000/03/2000-01-undergraduate-tuition-and-fees-are-set/.

26.     Students, in turn, agree to pay Harvard's costly tuition based on Harvard's promise to provide exactly what online classes cannot: a quality in-person learning experience.

27.     Among other things, that experience includes the interactions that occur with professors before, during, and after class. It also includes the spontaneous interactions that occur with fellow students before, during, and after class.

28.     And it includes access to Harvard's libraries, which has books, archives, and other resources that are only accessible in person. The in-person learning experience also includes access to study spaces.

29.     Other key facets of the experience include (but are not limited to):

- Face to face interaction with professors, mentors, and peers;

- Access to facilities such as libraries, laboratories, computer labs, and study rooms;

- Student governance and student unions;

- Extra-curricular activities, groups, intramural sports, etc.;

- Student art, cultures, and other activities;

- Social development and independence;

- Hands-on learning and experimentation, including labs and clinical education opportunities;

- Networking and mentorship opportunities; and

- In-person interactions with potential employers.

**B. Plaintiff and Class Members paid tuition and fees for Spring 2020 Term with the expectation of in-person learning.**

30.     Plaintiff and Class Members paid the cost of tuition and other fees for the Spring 2020 Term at Harvard.

31.     Undergraduate tuition for the Spring 2020 Term at Harvard is approximately $23,865. Other fees include, but are not limited to, a Student Health Fee, Student Services Fee, and a Student Activity Fee.

32.     Spring 2020 Term graduate tuition at Harvard varies on area of study and year of study, but most PhD and master's programs charge $24,004 per Term for the first two years of study. Harvard Business School costs approximately $36,720 for the Spring 2020 Term and Harvard Law School costs approximately $32,937 for the Spring 2020 Term. Graduate students are also charged fees similar to the undergraduate fees listed above.

33.     Spring Term classes at Harvard began on January 27, 2020. Classes for the Term ended on April 29, 2020 and the final examination period ended on May 16, 2020.

### C. Harvard ends in-person classes and moves to online instruction without issuing a tuition refund.

34.     On December 31, 2019, governmental entities in Wuhan, China confirmed that health authorities were treating dozens of cases of a mysterious, pneumonia-like illness. Days later, researchers in China identified a new virus that had infected dozens of people in Asia, subsequently identified and referred to as the novel coronavirus, or COVID-19.

35.     By January 21, 2020, officials in the United States were confirming the first known domestic infections of COVID-19.

36.     Due to an influx of thousands of new cases in China, on January 30, 2020, the World Health Organization officially declared COVID-19 as a "public health emergency of international concern."

37.     By March 11, 2020, the World Health Organization declared COVID-19 a pandemic.

38.     Travel and assembly restrictions began domestically in the United States on March 16, 2020, with seven counties in the San Francisco, California area announcing shelter-in-place orders. Other states, counties, and municipalities have followed the shelter-in-place orders and as of April 6,

2020, 297 million people in at least 38 states, 48 counties, 14 cities, the District of Columbia, and Puerto Rico are being urged or directed to stay home.

39.     As it relates to this suit, on March 10, 2020, Massachusetts Governor Charlie Baker declared a state of emergency, giving local officials more flexibility to respond to the Coronavirus outbreak.

40.     On the same day, March 10, 2020, Harvard announced on its website and in an email to students and faculty from President Lawrence S. Bacow that beginning March 23, 2020 (the first day back from Spring Recess), it would transition all classes to virtual instruction until further notice:

> Dear Members of the Harvard Community,
>
> Like all of you, I have been intently following reports of Coronavirus Disease 2019 (COVID-19) and considering the many ways in which its future course might alter my life and the lives of those closest to me. These past few weeks have been a powerful reminder of just how connected we are to one another—and how our choices today determine our options tomorrow.
>
> Fortunately, a group of extremely dedicated people has been working literally around the clock to respond to the challenges posed by COVID-19. Our teams are considering every contingency as they undertake their important work, and I write today to update you on major near-term changes that will limit exposure to the disease among members of our community:
>
> - We will begin transitioning to virtual instruction for graduate and undergraduate classes. Our goal is to have this transition complete by Monday, March 23, which is the first day of scheduled classes following Spring Recess.
>
> - Students are asked not to return to campus after Spring Recess and to meet academic requirements remotely until further notice. Students who need to remain on campus will also receive instruction remotely and must prepare for severely limited on-campus activities and interactions. All graduate students will transition to remote work wherever possible. Schools will communicate more specific guidance and information, and we encourage everyone to review prior guidance about both international and domestic travel.
>
> - We are transitioning over the course of the next few days to non-essential gatherings of no more than 25 people. Please note this is a change from prior guidance.
>
> The decision to move to virtual instruction was not made lightly. The goal of these changes is to minimize the need to gather in large groups and spend prolonged time in close proximity with each other in spaces such as classrooms, dining halls, and residential buildings. Our

actions are consistent with the recommendations of leading health officials on how to limit the spread of COVID-19 and are also consistent with similar decisions made by a number of our peer institutions. The campus will remain open, and operations will continue with appropriate measures to protect the health of the community.

For regular updates and additional information, please visit this dedicated webpage. Provost Alan Garber, Executive Vice President Katie Lapp, and HUHS Executive Director Giang Nguyen will continue to send you updates by email as needed. You will also continue to receive School- or Unit-specific information from local leadership. If you are a student or faculty member and have specific questions or concerns, I encourage you to be in touch with the contacts identified by your dean. If you are an employee, I encourage you to be in touch with your manager.

Despite our best efforts to bring the University's resources to bear on this virus, we are still faced with uncertainty—and the considerable unease brought on by uncertainty. It will take time for researchers, a good many of them who are our colleagues, to understand enough about this disease to mount a reliable defense against it. Now more than ever, we must do our utmost to protect those among us who are most vulnerable, whether physically or emotionally, and to treat one another with generosity and respect. Please remember that Harvard Counseling and Mental Health Services and the Harvard Employee Assistance Program are available to help you manage anxiety and stress. Your mental health is just as important as your physical health.

To our students, I know it will be difficult to leave your friends and your classrooms. We are doing this not just to protect you but also to protect other members of our community who may be more vulnerable to this disease than you are.

To our faculty, I recognize that we are asking you midway through the semester to completely rethink how you teach. We do this because we know that you want to avoid putting your students at risk.

To our staff, I understand that we are expecting you to go above and beyond in your efforts to support our important mission of teaching and scholarship. We do this because we know we can rely on your creativity, flexibility, and judgment through these challenging times.

I am proud to be a member of a community where people put the greater good above their own self-interest. Thank you for your patience and your resilience as we all learn to temper increased distance with deeper care for one another.

With appreciation,
Larry

41.     In doing so, President Bacow stressed the importance of in-person educational

experiences and the difficulty of online learning: "To our students, I know it will be difficult to leave

your friends and your classrooms . . . to our faculty, I recognize that we are asking you midway through the semester to completely rethink how you teach."

42.     Shortly after President Bacow's announcement, Harvard closed almost all of its campus facilities and Harvard has not held any undergraduate or graduate in-person classes since March 13, 2020.

43.     Following the closure of its facilities in March 2020, Defendant did not deliver the educational services, facilities, access, and opportunities that Plaintiff and Class Members contracted and paid for during the Spring 2020 Term. Defendant did not issue any sort of compensatory tuition reimbursement.

**D.  Harvard maintains virtual instruction for Fall 2020 without any reduction in any tuition or fees.**

44.     In May 2020, Harvard announced the continued closure of Defendant's facilities during the upcoming Fall 2020 Term.

45.     For example, on June 3, 2020, Harvard Law School Dean John Manning sent the following announcement to current and incoming law students and faculty:

Dear HLS Students,

I write to update you on our plans for Fall Term 2020. We have all hoped these past few months that the upcoming academic year could begin, at least in part, on campus. However, in light of the daily news about the continuing health risks of the pandemic, advice from public health experts, and the very real concern that testing will not yet be available on the scale or frequency needed to adequately monitor COVID-19-related illness in the Harvard community, we have found it necessary to conclude that Fall Term 2020 will be online.

This is not the announcement we'd hoped to make. But our first priority is, and must continue to be, the health and safety of our community, and we cannot reliably conclude at this time that we can safely provide an effective on-campus program this fall. We recognize that the public health situation may evolve between now and the end of August, and we dearly hope, as everyone does, that scientific developments with respect to COVID-19 will allow greater in-person activity, here and elsewhere, very soon. We also recognize, however, that you must be able to make appropriate plans for the coming semester and year, and that we owe it to you to communicate a decision sufficiently far in advance to enable you to do so. So, while we will keep you apprised as we learn more, we must now turn our focus fully to

developing the best, most robust, highest-quality online academic, clinical, and extracurricular programming we can for the coming term.

We look forward to teaching—and learning from—you and to forming with you, as we do each year, an active and engaged community of learning and service. The Harvard Law School faculty is already hard at work adapting their teaching plans in order to offer the best online courses and clinics possible. In order to be prepared in the event it proved necessary again to teach and learn online, we have been busy, in recent weeks, studying and absorbing the latest research about how students best learn online and identifying the range of tools, techniques, and approaches that create excellent, engaging online courses. And we have extensively surveyed our faculty and (as you know) our students to gain insights from last spring's online teaching experience, with an eye toward tailoring best practices in online learning to the distinctive pedagogy of the law school classroom. We have also learned from last spring's experience that our clinics can successfully design and offer compelling, meaningful online opportunities for learning and for service to communities in need. It is an exciting process, with much to be learned and much new to try in our virtual classrooms and clinics. I'm inspired by the creativity and dedication with which faculty are planning for the fall as we work to nurture a vibrant, connected online community.

We also have been working to identify and develop channels for creating meaningful interactions and connections outside the classroom and for supporting the extracurriculars that are an integral part of your law school experience. As part of this programming, we are creating additional opportunities for advising and career planning, as well as a robust set of online events. We look forward to engaging student organization leadership in the coming weeks to learn more about—and to find ways we can support—their plans for fostering student engagement in the coming year. For incoming students, we are planning comprehensive orientation programs, with a particular focus on small group meetings so that you can get to know your classmates and our staff and faculty better before the term begins. Incoming JD students will have the opportunity to meet your section leaders and classmates not only during orientation, but in small groups beforehand, and LL.M students will be able to connect with classmates, Graduate Program leadership, and faculty members prior to the start of the term.

With the news that Fall Term 2020 will be online, you will have many specific questions about what to expect. Given rapidly changing circumstances, we will not be able to answer all of these questions here, but hope that these FAQs will begin to answer many of the most important ones. We very much want to learn more about the concerns you may have, and the circumstances you may face, as you prepare for the months ahead—including where you are, or are likely to be, physically located in the fall and which of your specific questions we have not yet addressed. **To that end, we will soon circulate a brief survey that will help us as we plan an engaging and enriching fall program and as we advise you about how to navigate the educational challenges created by this pandemic. We will ask that you please respond by 5:00 p.m. Friday, June 5, so that we can take your specific questions into account in our planning.** We will continue to update the FAQs as we learn more in the days and weeks ahead.

In the meantime, we are working hard to address the fact that the shift to a full semester of online learning will pose particular challenges for some – for example, those who

face difficult learning environments at home, those who have technological challenges, or those in time zones remote from that of Cambridge who may find it difficult to participate in classes in real-time, as is required by the active-learning approach to law school pedagogy. We are seeking ways to mitigate those challenges, for example, by supplementing existing grant aid with the development of a new Technology Assistance Fund that will provide up to $1 million to help our students address technological obstacles to participating fully in online learning; by giving priority in the allocation of limited HLS dormitory housing to those facing technological or other circumstances that make it difficult to engage in online learning at home; and by working to identify, if possible, ways to increase the courses available in time slots that are easier for students in remote time zones.

We realize that, for a variety of reasons, an online learning experience may not be optimal for all of you and that international students, in particular, may face some unexpected challenges relating to travel and to visa status this coming year. Accordingly, we will offer an additional deferral period for our newly admitted JD and LL.M students. The new period will run from June 15 through June 19. We will also extend from June 15 to June 19 the deadline for returning students to opt for a fall-semester or full-year leave during Academic Year 2020–2021. To help you make your decision, our faculty and student services staff will be available to advise you. We will also continue to update our FAQs as we learn more. We very much hope that you choose to remain in what we expect to be an exciting and enriching online academic and social program. But we want to be sure that you have a fair opportunity to make a decision that is right for you based on the best information we can provide you at this time.

Last spring, we had to adapt quickly to new formats and unexpected locations for learning and teaching. The fact that this unprecedented transformation was achieved with so little time to plan was a testament to our community. I am grateful to everyone—our students, faculty, and staff—for all they did to create an effective and enriching learning experience in challenging circumstances. This coming semester, though, asks something different of us—to use technology to design even more creative, exciting, and excellent experiences in support of learning, building community, and engaging in the service that helps those most in need and that is fundamental to the work lawyers do. This is our work now, as we take this next important step together. I look forward to working with all in this extraordinary community as we embrace new opportunities and challenges.

Best,

John Manning

46.     Upon information and belief, Harvard intends to conduct virtual classes at many of its degree-granting schools.

47.     Despite the fact that the Fall 2020 Term will occur solely in an online format, Defendant also announced its intention to maintain the tuition for each Harvard school for the Academic Year 2020–2021 at the 2019–2020 level.

**E.  Harvard's refusal to reduce its tuition harms Plaintiff and Class Members.**

48.     As students who will no longer receive the educational services, facilities, access, and opportunities that they were promised, Plaintiff and all other Class Members have suffered significant economic damages as a direct result of Harvard's refusal to lower tuition and fees for the Spring 2020 and Fall 2020 Terms.

49.     Though the reasons for Harvard's continued closure may be justified, the fact remains that such a closure presents significant losses to Plaintiff and the Class Members as even Defendant's own communications recognize.

50.     Students across the country have offered apt descriptions of the loss they have experienced as a result of the pandemic, highlighting the disparity between students' bargained for educational experience and the experience that colleges and universities, including Defendant, now provide.

51.     For example, as reported in The Washington Post, one student "wonders why he and others . . . are not getting at least a partial tuition refund. Their education, as this school year ends in the shadow of a deadly pandemic, is nothing like the immersive academic and social experience students imagined when they enrolled. But tuition remains the same: $27,675 per semester . . . 'Our faculty are doing a good job of working with us,' said Patel, 22, who is from New Jersey. 'But at the end of the day, it's not the same as in-person learning. . . . It shouldn't just be a part of the business model where, no matter what happens, you have to pay the same amount. The cost needs to reflect some of the realities.'"[9]

52.     As another example, as reflected in a Change.org petition, with nearly 5,000 supporters, students at another major university highlight the loss experienced by students: "As a

---

[9] https://www.washingtonpost.com/education/2020/04/16/college-students-are-rebelling-against-full-tuition-after-classes-move-online/.

result of the COVID-19 global pandemic crisis, Governor Pritzker has declared a state of emergency in Illinois. In response, Northwestern University made the sensible decision to offer all Spring 2020 courses online for the start of the quarter and will likely extend this to the rest of the quarter as the situation worsens. While this is certainly the right call to ensure the health and safety of all students, Northwestern's tuition and fees do not accurately reflect the value lost by switching to online education for potentially an entire term. For the following reasons, we are seeking a partial refund of tuition and full refund of room and board for the Spring 2020 quarter. Since Northwestern is a top private university, the estimated annual cost of attendance of $78,654 goes towards a comprehensive academic experience that cannot be fully replicated online. Due to the COVID-19 crisis, students paying for the Northwestern experience will no longer have access to invaluable face-to-face interaction with faculty, resources necessary for specific programs, and access to facilities that enable learning."[10]

53.     Another university's student newspaper reflects another example: "At this time, most of the campus and dorms need not be rigorously maintained. No events will be held, nor speakers hosted. The world-class education that consists in having opportunities to work and interact with academics and peers (not to mention the vast numbers of innovators, creators, doctors, organizers, and more that congregate on our campus) will no longer be provided."[11]

54.     Harvard students similarly called for tuition refunds. In the Harvard Crimson, School of Public Health student Bryan O. Buckley noted "changes in quality of education, future economic insecurity in light of the pandemic, and inability to cultivate a professional network on campus as reasons why students are pushing for reimbursements." He continued, " . . . I also think one of the rich parts about being at Harvard [...] is also the social capital that you're able to make while here at

---

[10] https://www.change.org/p/northwestern-university-tuition-fees-reduction-for-spring-2020.
[11] https://www.chicagomaroon.com/article/2020/3/19/uchicago-lower-tuition-spring-2020/.

Harvard. The connections that you're able to make, the people that you're able to see, a lot of the programming that you're able to attend."[12]

1. *The Named Plaintiff's Experiences*

55.     Plaintiff Abraham Barkhordaar first enrolled at Harvard in Fall 2019. He is a current law student entering his second year at Harvard Law School in Fall 2020.

56.     He agreed to enroll at Harvard and pay three years of tuition under the promise that he would live on-campus and attend classes in-person. In addition, he paid tuition under the promise that he would have full access to on-campus facilities.

57.     In-person interactions with his professors and fellow students were of paramount importance in deciding to enroll at Harvard.

58.     Plaintiff paid his Spring 2020 tuition on January 15, 2020.

59.     He was on-campus when Harvard announced the end of in-person classes, and students were told that they could not return to campus.

60.     Plaintiff did not receive any refund or reimbursement of his Spring 2020 tuition.

61.     As a result of Harvard's actions, Plaintiff is no longer able to enjoy a significant number of benefits that his tuition had previously paid for and to which he was entitled.

62.     Plaintiff wants to continue his education in Fall 2020 in order to complete his degree on time.

63.     On June 3, 2020, the Dean of Harvard Law School announced that the law school would not hold in-person classes for the Fall 2020 Term.

64.     Harvard Law School has stated that it will continue to charge students full tuition (although without any annual increase from the 2019 to 2020 school year).

---

[12] https://www.thecrimson.com/article/2020/4/6/grad-students-tuition-reimbursements/.

65.     Because Harvard refuses to reduce its tuition and fees for Fall 2020, Plaintiff will suffer economic harm in the future. He will be paying for services promised by the agreement to pay full tuition but not delivered by Harvard.

    2.  *Economic Damages*

66.     Plaintiff and Class Members are entitled to compensation for services not received in the Spring 2020 Term and similar compensation for any subsequent term in which Harvard chooses to charge full tuition for online learning. Even if Defendant did not have a choice in cancelling in-person classes, it nevertheless improperly attempts to retain and continue to charge funds for services it did not and will not provide.

67.     Plaintiff and Class Members did not intend to attend an online educational institution, but instead enrolled in Defendant's institution on an in-person basis. The online learning option Defendant offers is subpar in practically every aspect. The remote learning option is in no way the equivalent of the in-person education putative Class Members were promised when they committed to attend Harvard.

68.     Moreover, a remote education is not even remotely worth what Defendant charged Plaintiff and Class Members for the Spring 2020 Term and intends to charge Plaintiff and Class Members for the Fall 2020 Term. The tuition and fees for in-person instruction at Harvard are higher than tuition and fees for Harvard's other online courses and programs because such costs cover not just the academic instruction, but encompass an entirely different learning and living experience, as described above.

69.     Furthermore, by offering some students—but not all—the opportunity to request a one-year deferral, Defendant offers Plaintiff and some Class Members a coercive choice.[13] Students

---

[13] For instance, while the Law School offered students the opportunity to defer (albeit on short notice), the Graduate School of Education did not offer students the opportunity to defer at all.

may either pay the outrageous tuition and fees Defendant demands or interrupt their planned education. For current students, a deferral would not only amount to an interruption in education but would also result in the waste of tuition and fees previously paid to Defendant.

70.     Plaintiff and Class Members are thus entitled to a proportionate reimbursement of tuition and fees for the Spring 2020 Term and a similar reimbursement for any subsequent academic term conducted in online format and for which Harvard charges tuition and fees at the same level or higher as prior years. Such a reimbursement must be proportionate to the significantly lesser experience an online education provides as compared to a traditional in-person experience.

## V.      CLASS ACTION ALLEGATIONS

71.     Plaintiff incorporates by reference all the foregoing allegations.

72.     Plaintiff brings this action on behalf of himself and all others similarly situated pursuant to Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

73.     Plaintiff seeks to represent the following Class:

> All people paying tuition to one of Harvard's 12 degree-granting schools in whole or in part, personally and/or on behalf of others, for on-campus instruction during the Spring 2020 Term.

74.     Specifically excluded from the Class are Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

75.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint.

76.     The Class, and their counsel, satisfy the prerequisites of Federal Rule of Civil Procedure 23(a) and 23(g) and the requirements of Rule 23(b)(3).

77.     **Numerosity and Ascertainability.** The members of the Class are geographically dispersed throughout the United States and the world and are so numerous that individual joinder is impracticable. Upon information and belief, Plaintiff reasonably estimates that there are thousands of members in the Class. As noted above, Harvard has at least 20,000 students across its degree-granting schools. Although the precise number of Class Members is unknown to Plaintiff, the true number of Class Members is known by Defendant and may be determined through discovery. Class Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

78.     **Commonality and Predominance.** Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class Members. These common legal and factual questions include, but are not limited to, the following:

a) whether Defendant charged the same amount of money to Class Members in exchange for a significantly reduced service compared to what Class Members originally accepted when they paid for the Spring 2020 Term;

b) whether Defendant plans to charge the same amount of money to Class Members in exchange for a significantly reduced service compared to what Class Members originally expected for the upcoming Fall 2020 Term;

c) whether Defendant will provide the services the Class Members originally accepted in exchange for commitment to the school and payment of tuition and fees;

d) whether Class Members are entitled to a reimbursement of tuition and fees for the prior Spring 2020 Term and a reduction of tuition and fees for the upcoming Fall 2020 Term;

e) whether Defendant plans to unlawfully convert money from Plaintiff and the Class; and

f) whether Defendant is liable to Plaintiff and the Class for unjust enrichment.

79.     **Typicality.** Plaintiff's claims are typical of the other Class Members' claims because all Class Members were comparably injured through Harvard's substantially uniform misconduct as described above. The Plaintiff representing the Class is advancing the same claims and legal theories on behalf of himself and all other members of the Class that he represents. Further, there are no defenses available to Defendant that are unique to Plaintiff.

80.     **Adequacy of Representation.** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class. Furthermore, Plaintiff has no interests that are antagonistic to those of the Class.

81.     **Superiority.** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class Members are relatively small compared to the burden and expense of individual litigation of their claims against Defendant. It would thus be impossible for the Class to obtain effective redress for the wrongs committed against them on an individual basis. Furthermore, even if Class Members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase delay and expense to all parties and the court system. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

82.     In the alternative, the Class may also be certified because:

a)   the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for the Defendant;

b)   the prosecution of separate actions by individual Class Members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive

20

of the interests of other Class Members not party to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

c) Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

## VI.   CAUSES OF ACTION

## COUNT I

### BREACH OF CONTRACT

83.   Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint. Plaintiff brings this claim on behalf of himself and on behalf of the members of the Class against Defendant.

84.   Through the admission agreement, Plaintiff and each member of the Class entered into a binding contract with Defendant. Furthermore, through the payment of tuition and fees for the prior year(s) at Defendant's institution, Plaintiff and Class Members who are current students at Harvard (distinguished from incoming students) entered into an additional implied agreement with Defendant to complete their education at Harvard in the traditional in-person format.

85.   Defendant has since removed this choice without offering a proportionate reimbursement in tuition and fees.

86.   As part of these contracts, and in exchange for the aforementioned consideration, Defendant promised to provide certain services, all as set forth above. Plaintiff and Class Members fulfilled their end of the bargain when they paid tuition and fees and forwent the opportunity to attend an alternate school instead of Harvard.

87.   The reported tuition for the Spring 2020 Term was intended to cover in-person education services. In exchange for committing to attend Harvard and paying the reported tuition and fees, Class Members were and are entitled to in-person educational services for the Spring.

88.     Defendant did not provide the contracted for services for the Spring 2020 Term. Instead, Defendant has transferred all learning to an online format and has not proportionately reimbursed or reduced tuition and fees. Defendant requires the same money payment from Plaintiff and the Class as originally agreed upon but has reneged upon its commitment to provide to Plaintiff and the Class the benefit of their bargain.

89.     Further, Defendant has now indicated that it will not be providing the contracted for services in the Fall 2020 Term either.

90.     Plaintiff and members of the Class have suffered damages as a direct and proximate result of Defendant's breach, including but not limited to being deprived of the education, experience, and services to which they were promised and for which they forwent alternative work and educational experiences.

91.     As a direct and proximate result of Defendant's breach, Plaintiff and the Class are entitled to damages to be decided by the trier of fact in this action. Such damages include but are not limited to the reimbursement of certain tuition, fees, and other expenses that Defendant collected but did not deliver. Defendant should provide a significant reimbursement for the tuition and fees Plaintiff and Class Members paid for the Spring 2020 Term and any subsequent academic term conducted in online format and for which Harvard charges tuition and fees at the same level or higher as prior years.

92.     Defendant's performance under the contract is not excused due to COVID-19. Indeed, there is no plausible excuse for Defendant to retain and continue to charge full tuition and fees when it did not provide and has no plans to provide the promised educational services. Even if performance was excused or impossible, Defendant would nevertheless be required to reimburse the funds it charged for services it did not provide in Spring 2020 or later.

## COUNT II

### Unjust Enrichment

93.      Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint. Plaintiff brings this claim on behalf of himself and on behalf of the members of the Class against Defendant.

94.      Plaintiff and members of the Class conferred benefits on Defendant in the form of committing to attend the institution—thereby forgoing alternative professional and educational opportunities—and paying tuition and fees.

95.      At the time of this commitment, tuition and fees were intended to cover in-person educational services. In exchange for committing to attend Harvard, Class Members were entitled to in-person educational services for the duration of their time as a student at Harvard.

96.      Defendant voluntarily accepted and retained these benefits by soliciting, welcoming, and accepting commitment to the institution and payment of tuition and fees. Defendant had an appreciation or knowledge of such benefits being accepted and retained as corresponding to the subsequent services Defendant was to provide (*i.e.*, in-person education).

97.      Defendant has retained these benefits, even though Defendant *did not* provide the education, experience, and services for which the benefits were predicated on during the Spring 2020 Term and has announced that it *will not* provide the same education, experience, and services for many Class Members during the Fall 2020 Term.

98.      Defendant's retention is unjust under the circumstances. Accordingly, Defendant should reimburse Plaintiff and Class Members for tuition and fees paid since Spring 2020 for educational services it did not or will not provide.

99.      It would be unjust and inequitable for Defendant to retain the benefits of student commitment and tuition and fees when it has not fulfilled its end of the bargain. Defendant should

therefore be required to proportionally reimburse students tuition and fees starting with the Spring 2020 Term to eradicate this unjust enrichment.

## COUNT III

## CONVERSION

100.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint. Plaintiff brings this claim on behalf of himself and on behalf of the members of the Class against Defendant.

101.     Plaintiff and the other members of the Class have an undisputed right to receive educational services, activities, and access to Defendant's facilities for the Spring 2020 Term. Plaintiff and the Class Members obtained such rights by paying Defendant tuition, fees, and/or room and board and by otherwise remaining in good standing with Defendant.

102.     Defendant wrongfully exercised control over and/or intentionally interfered with the rights of Plaintiff and members of the Class by effectively closing its campus to in-person education and switching to an online-only format, discontinuing paid-for services, and evicting students from campus housing. All the while, Defendant has unlawfully retained the monies Plaintiff and the Class Members paid Defendant, as well as barred Plaintiff and members of the Class from use of Defendant's facilities.

103.     Defendant deprived Plaintiff and the other Class Members of the rights and benefits for which they paid Defendant tuition, fees, and/or room and board.

104.     Plaintiff and/or Class Members have requested and/or demanded that Defendant issue refunds.

105.     Defendant's interference with the rights and services for which Plaintiff and members of the Class paid damaged Plaintiff and the members of the Class, in that they paid for rights, benefits,

services, and/or facility access, but Defendant has deprived Plaintiff and members of the Class of their rights, benefits, services, and/or facility access.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that judgment be entered against the Defendant and that the Court grant the following:

a) An order determining that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, that Plaintiff is Class Representative, that Plaintiff's attorneys shall be appointed as Class Counsel pursuant to Rule 23(g) of the Federal Rules of Civil Procedure, and that Class notice be promptly issued;

b) Judgment against Defendant for Plaintiff's and Class Members' asserted claims for relief;

c) For compensatory and punitive damages in amounts to be determined by the Court and jury;

d) For prejudgment interest on all amounts awarded;

e) For an order of restitution and all other forms of equitable monetary relief;

f) For an injunctive relief as pleaded or as the Court may deem proper; and

g) For an order awarding Plaintiff and the Class their reasonable attorney's fees and expenses and costs of suit.

## JURY DEMAND

Plaintiff demands trial by jury on his own behalf and on behalf of Class Members.

Dated: June 22, 2020                Respectfully submitted,

                                    By: */s/ Kristie LaSalle*
                                    Kristie LaSalle (BBO #692891)
                                    HAGENS BERMAN SOBOL SHAPIRO LLP
                                    55 Cambridge Parkway, Suite 301
                                    Cambridge, MA 02142
                                    (617) 482-3700
                                    kristiel@hbsslaw.com

                                    Steve W. Berman (*Pro Hac Vice* Forthcoming)
                                    HAGENS BERMAN SOBOL SHAPIRO LLP
                                    1301 Second Avenue, Suite 2000
                                    Seattle, WA 98101
                                    (206) 623-7292
                                    steve@hbsslaw.com

                                    Daniel J. Kurowski (*Pro Hac Vice* Forthcoming)
                                    Whitney K. Siehl (*Pro Hac Vice* Forthcoming)
                                    HAGENS BERMAN SOBOL SHAPIRO LLP
                                    455 N. Cityfront Plaza Dr., Suite 2410
                                    Chicago, IL 60611
                                    (708) 628-4949
                                    dank@hbsslaw.com
                                    whitneys@hbsslaw.com

                                    Warren T. Burns (*Pro Hac Vice* Forthcoming)
                                    LeElle Slifer (*Pro Hac Vice* Forthcoming)
                                    Russell G. Herman (*Pro Hac Vice* Forthcoming)
                                    BURNS CHAREST LLP
                                    900 Jackson Street, Suite 500
                                    Dallas, Texas 75202
                                    Telephone: (469) 904-4550
                                    Facsimile: (469) 444-5002
                                    wburns@burnscharest.com
                                    lslifer@burnscharest.com
                                    rherman@burnscharest.com

                                    *Attorneys for Plaintiff, individually and on behalf of all others*
                                    *similarly situated*